Thank you, Your Honor. Good morning. I am here on behalf of Jack Gardner, and I'd like to reserve my remaining time for rebuttal. I propose to discuss three issues of legal error and lack of substantial evidence in this case for the Court this morning, addressing the probative medical evidence, the credibility analysis, and the vocational expert testimony. With regard to the medical evidence, in order to properly reject a treating physician opinion, this Court has found that an ALJ must set out the facts, interpret them, and make findings. An ALJ must give specific functional limits based on his informed interpretation of the totality of the probative evidence. Social Security rulings also require that if the residual functional capacity assessment of the administrative law judge conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. The ALJ's residual functional capacity in this case found that Mr. Gardner could perform work with little public contact and routine repetitive work. Treating doctors Brown, Nearest, and Knoll, however, stated that he could not work. In 1998, Dr. Knoll stated that his current level of anxiety would interfere with meeting demands of a normal work environment. In 1999, treating Dr. Brown stated that high levels of anxiety and depression for Mr. Gardner were so severe as to interfere with his ability to function in a work setting. In 2000, Dr. Nearest stated it was apparent that Mr. Gardner was currently unable to perform ongoing gainful employment. The ALJ made no interpretation or findings regarding two-thirds of the treating physician opinions in this case, those of Dr. Brown and Dr. Nearest. The ALJ improperly dismissed the opinion of Dr. Knoll by finding she had only seen him for a limited time. In fact, she saw him many months before her opinion, with at least six meetings and nine phone calls prior to giving her disability opinion. The ALJ also stated that Dr. Knoll may have been improperly medicating Mr. Gardner. There is no basis for the ALJ to make this comment. The Commissioner has stated that since the ALJ considered many of the doctor's reports, the ALJ's analysis should be adequate. However, each treating doctor who offers probative evidence should be properly considered in order to base an informed decision on the record as a whole. Over the span of three years, three treating doctors offered opinions of disability. No other treating doctors contradicted them. Mr. Gardner believes it was legal error not to interpret or make appropriate findings about the treating doctor's opinions. Addressing credibility, the ALJ is required to give specific and cogent reasons for disregarding the claimant's testimony regarding his limitations. Cogent is defined by the dictionary as forcibly convincing. The reasons that the ALJ gave in this case were not cogent. He said that Mr. Gardner had not had any additional treatment for his liver disease. But the doctor said that Mr. Gardner was highly motivated for treatment. He was not psychiatrically stabilized. The ALJ said that Mr. Gardner moved several times. He put on a case without an attorney. His disability appeared in a rush on the last day of his job. These statements are not supported by record evidence. Yes, he did move several times. But there is no evidence to suggest how many belongings he moved or the fact that disability causes people to move because they have no income. He did put on a case without an attorney. However, up until the week prior to his hearing, his attorney had done all the work. There's no evidence in the record to show why the attorney did not come to the hearing. His disability did not appear in a rush on the last day of his job. For several months prior to leaving his job at Los Alamos, he was diagnosed with severe depression. His brother testified. I'm sorry. Who diagnosed that severe depression? That was. Prior to his leaving his job. I don't have that doctor's name available. It's mentioned in Dr. Wyman's. Did the information get before the ALJ? It was in the record before the ALJ that that there was treatment for the depression prior to his leaving work. Documented by a doctor. Yes, it was documented by a doctor. And it was, again, mentioned in the report that was done for LNI by Dr. Wyman that he had been disabled for several months leading up to the end of his job. Well, was he actually disabled or was he suffering from some complaints while working? He was trying to work. And at the end of June of that particular year in which he stopped working, he just became unable to work. Did he get any kind of workman's compensation or service connected or work connected disability from the employer? There's no evidence in the record to suggest that he did or he didn't. There is a LNI evaluation that was performed in the record by Dr. Wyman. However, it doesn't state whether or not he actually received those benefits. Well, there was some something in the record about his medication. Who prescribed the medication at what point in time for his neurotic or nervous disorders medication? Well, he said over what and during what period of time, Your Honor? He said several doctors who prescribed him medications. Well, one of the ALJ said he found that some one of the doctors over medicated that he believed that he believed that was Dr. And what was that medication that I'm not sure, Your Honor, what that specific medication was. Well, some people function at some level on all kinds of medication, particularly the psychoneurotic patients that have some kind of a job they can do if they take their Prozac or whatever it is they're taking. And if they don't take it, they they become sort of unemployable. And sometimes it's a matter of fact that the ALJ has to consider is this person functioning under. Can he can he hold any job? And can he hold the job with the aid of medication? If he fails to take it, that's true. Or if he is, if the medication actually interferes with his ability to work as well as the finding. In this case, the finding was that he had the residual functional capacity to work with them with his medication. Yes. And but that he was limited to routine, repetitive work, which leads me to the third point that I'd like to make before I leave for some rebuttal time. And that is that the vocational expert did not have the limitations in front of him. That Mr. Gardner would often have deficiencies in concentration, persistence or pace. These are findings that the administrative law judge made, but we're not in front of the vocational expert. What did the book? I got the impression the vocational expert just testified from a hypothetical question. He didn't know anything about this particular patient. But that's absolutely true. That's how how these how the vocational experts typically testifies based on hypothetical limitations. Thank you. Thank you. Good morning. May it please the court. Lisa Wolf on behalf of the Commissioner for Social Security. This case involves a claim for Title two disability benefits. The claimant has alleged an onset date in September 1997, alleging that he could no longer work as a hydro environmental hydro geologist or perform other work. In this case, the L.J. wrote a 17 page decision. It was quite exhaustive. It discussed and summarized all medical evidence and the L.J. made appropriate credibility findings. Under the substantial evidence rule, this court and Mr. Gardner may not substitute another view of the evidence when the L.J.'s interpretation is reasonable. Here, substantial evidence supports the L.J.'s conclusions as a whole. This is not a case of picking excuse me, picking and choosing the most favorable reports. L.J. need only explain why significant probative evidence has been rejected and does not need to cite to every every report or every remark contained in the record. In this case, the L.J. review reviewed and analyzed and summarized each medical report. And he noted Dr. Wyman had completed a comprehensive psychological evaluation in 1998. He opined that claimant's job at Livermore National Labs caused him so much stress that he developed a reactive psychotic psychiatric syndrome to that stress. His disorder was significant, but it was amplified by his hysterical personality style. Dr. Wyman also noted that he was as a historian was his reliability was modestly compromised and that the claimant had a litigation driven style. That is that he was he was motivated to get Social Security disability benefits, but that this breakdown caused him to have slight to moderate limitations. The L.J. also reviewed Dr. Innes' reports and they were also that his analysis was also similarly accurate. The L.J. accepted Dr. Innes' findings as true. Dr. Innes, like Dr. Wyman, noted that the claimant had a penchant for exaggerating his symptoms and he was motivated to get disability. There's been an allegation that the L.J. did not discuss the reports of Dr. Simmons, Brown, Shonkoff, or Naras, all of which are claimants treating physicians. However, nothing in these reports, as Judge Martinez pointed out, contradicts the L.J.'s findings concerning his mental impairments. For example, Dr. Simmons diagnosed the claimant with a generalized anxiety disorder and major depression. Similarly, Dr. Brown and Dr. Naras both opined he had ongoing mental health limitations that affected his ability to work to fully function in the work environment. But neither of these doctors opined that he was disabled from working at all. Moreover, Dr. Simmons' report does not contain any specific functional limitations. Likewise, the L.J. discussed Dr. Brown's report, and like Dr. Simmons, Dr. Brown never offered any specific functional limitations. So in this case, the L.J.'s residual functional capacity, which limited Mr. Gardner to jobs that did not require intense interpersonal relationships or more than routine repetitive work properly accounted for his limitations. The issue before this Court is not whether the L.J.'s summary of the evidence matches the record with absolutely no omissions. If so, L.J.'s would be effectively prohibited from summarizing the record. Rather, the issue is whether the L.J.'s conclusions are supported by substantial evidence. And we ask that the Court affirm on this issue. With regard to credibility, this case really involves credibility. The record is replete with exaggerations of his symptoms. Judge Martinez pointed many out in his report and recommendation. We also briefed that issue thoroughly. There seems to be an attempt to turn this exaggeration on its head and allege it is part of his psychiatric impairment and that it should not be used in the credibility determination. Regardless of legitimate mental impairments, his admitted tendency to exaggerate plays a significant factor in the credibility analysis here. It's not simply reasonable to rely on a claimant who exaggerates his symptoms in order to truthfully explain the severity of his symptoms. In this case, the ALJ cited specific, clear, and convincing reasons why he found Mr. Gardner not credible. With regard to the hypothetical to the vocational expert, the ALJ presented all credible limitations, physical and mental, and the V.E. found jobs existing in hundreds of thousands of numbers that the claimant could perform. Because the ALJ's decision was supported by substantial evidence, we ask that you affirm this decision. Any questions? Thank you. Thank you. Ms. Holtz. Thank you. Setting aside Mr. Gardner's penchant for exaggeration, if we look simply at the other evidence in the record, the doctors who are experts in understanding these kinds of diagnoses and these kinds of impairments, there are three treating doctors, the only doctors in the record who have stated a disability opinion, who believe that Mr. Gardner is not able to work. So unless there is some reason in the record that doesn't seem apparent to disbelieve the credibility of these doctors and Mr. Gardner's brother, then, again, setting aside Mr. Gardner's own testimony, there is evidence to show that he is disabled. With regard to the substantial evidence argument, Mr. Gardner is not requesting that every single medical report in this record be considered. He's only asking for the probative evidence around his disability. There are a great deal of doctors in this record that have not been addressed here and have not been. Agreed on that he was depressed. They didn't agree on much of anything else. There never was any real agreement about his liver condition, how bad it was. And that's difficult because in the very last entry in the record where he went to the University of Washington and they did more studies to show the fibrosis and the deterioration of his liver, it's the record at least shows that he had those liver problems. He had hepatitis C for well over a decade. And he had been working along with that. He had. He had indeed. He had indeed. And and he was fatigued from it, which probably also led to the depression that he he suffered from. Well, out of all these 22 doctors that looked at him, did any of them figure out what kind of medication would would make him function effectively in spite of his mental condition? Well, that was the problem. Your honor. Again, looking at the liver condition, they tried many different medications, as you could see in the record. Unfortunately, because his liver was in such bad condition, he was not able to handle most. So the doctors had said so. The University of Washington doctors had indicated that they're just it was difficult to give him medications because of his liver condition. Correct. Yes. Thank you. And just to summarize, because the ALJ did not give a proper reason for disregarding the physician opinions, the lay opinions and the vocational expert opinions, Mr. Gardner respectfully requests that he be awarded disability benefits. Thank you so much. Thank you. We appreciate the helpful arguments from counsel on both sides.
judges: Lay , Goodwin, Gould